# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT K. RICKS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>C. KAMENA, et al.,<br><br>　　　　Defendants. | Case No. 1:15-cv-00715-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Scott K. Ricks ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 4.)

**I.　　Procedural Background and <u>Williams v. King</u>**

On July 6, 2016, the Court screened Plaintiff's complaint and found that he stated a cognizable claim against Defendant Kamena for the failure to protect him from his cellmate's attack as he was attacked, and for deliberate indifference to Plaintiff's serious medical need following the attack, in violation of the Eighth Amendment. (ECF No. 16.) After Plaintiff notified the Court that he wished to proceed only on the claims found cognizable, the Court dismissed all other claims and defendants from this action. (ECF Nos. 17, 18.) This case has proceeded on Plaintiff's Eighth Amendment claims against Defendant Kamena.

///

1

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Ninth Circuit held that a Magistrate Judge does not have jurisdiction to dismiss a case during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, all Defendants were not yet served at the time that the Court screened the complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because all Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in the previous screening order, she will below recommend to the District Judge that the non-cognizable claims be dismissed.[1]

**II.     Findings and Recommendations on Complaint**

   **A.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken

---

[1] On October 2, 2017, Defendant Kamena filed a motion for summary judgment. (ECF No. 32.) As discussed herein, these findings and recommendations are based upon a screening of the allegations in Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B), at the time that it was filed. The Court makes no findings on the merits of the arguments, defenses, or affirmative defenses raised in the pending motion for summary judgment. Separate findings and recommendations will issue on that motion in due course.

as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**B.     Plaintiff's Allegations**

Plaintiff is currently a state prisoner in custody at Salinas Valley State Prison in Soledad, California. His complaint concerns events that occurred while he was housed at North Kern State Prison. Plaintiff names the following Defendants: (1) Correctional Officer C. Kamena, (2) Correctional Sergeant E. Gonzalez, (3) Correctional Lieutenant P. Davis, (4) Warden S. Alfaro, (5) Chief of Appeals R. Briggs, and (6) Licensed Vocational Nurse ("LVN") J. Angulo. All Defendants are being sued in both their individual and official capacities.

**1.     Beating and Treatment of Plaintiff**

On December 19, 2013, Plaintiff was transferred from San Bernardino County Jail to North Kern State Prison. Plaintiff is white and was placed in a cell with inmate Scott Garcia, a Hispanic gang member. Plaintiff got into numerous cell fights with inmate Garcia but custody refused to separate them. On January 13, 2014, inmate Garcia was physically assaulted by two other gang members in another cell. Upon inmate Garcia returning to his cell, Plaintiff alleges in his complaint:

> Garcia yelled at me, "You fucking racist!!!" and began hitting me in the back of the head with a cup. This action caused me to have an epileptic seizure.
> A while later, as I regained consciousness, [inmate] Garcia was

> standing over me, kicking me repeatedly. Wearily, I somehow managed to crawl to the cell door, and I began yelling, "Correctional Officer, man down, Cell 120. Man down, Cell 120." After several moments, Correctional Officer C. Kamena came to the door. As I was standing there at the door I had blood pouring profusely from my nose, saturating my white t-shirt, I told C/O C. Kamena, "My cellie just attacked me and I had a seizure! Please help me! Open this door!!!"
>
> Correctional Officer C. Kamena just laughed at me and shook his head, spun on his heel, and walked away from the cell door, to the Control Booth Tower, to talk to [Correctional Officer] Gentiles. I heard him say, clear as a bell, "He says his cellie just attacked him, what should I do?" (ECF No. 1, p. 4, 6–7.)

Plaintiff next alleges that Garcia threatened to kill him because he was a "rat" and began hitting Plaintiff in the head with the cup again, while Plaintiff yelled for help. Plaintiff was then knocked unconscious for a second time.

When Plaintiff regained consciousness, he was handcuffed and Licensed Vocational Nurse ("LVN") J. Angulo was using ammonia to revive him. Plaintiff's left eye was swollen almost shut and he was completely blind out of that eye. Plaintiff was taken to the holding cages by the Facility "D" Program Office and "was glanced at," (ECF No. 1, p. 8), by LVN Angelo. Plaintiff told LVN Angelo that he had been attacked, had a seizure, and was blind out of his left eye.

Plaintiff met with Sergeant Gonzalez and told him what had occurred. Plaintiff alleges that Gonzalez told Plaintiff that he could either sign a marriage chrono,[2] or be placed in Administrative Segregation until his Rules Violation Report ("RVR") hearing. Plaintiff further alleges that Sergeant Gonzalez asked whether Plaintiff was going to sign the chrono and go back to the unit, or "go to the hole tonight and think about things?" (ECF No. 1, p. 8.) Plaintiff alleges that he felt that he did not have a choice and signed the marriage chrono. Plaintiff was moved two cells away from inmate Garcia. The next day, inmate Garcia yelled that he was going to kill Plaintiff. Inmate Garcia then got into another fight with another cellmate, and was moved out of the building that same day.

---

[2] "A statement that [Plaintiff] was comfortable being housed with [inmate Garcia]." (ECF No. 1, p. 8.)

Plaintiff received a copy of his RVR, written by Officer Kamera, on January 17, 2015, and alleges that the report written by Kamena was a complete fabrication and contained nothing but lies. Plaintiff requested that Officer Kamena be present at his RVR Hearing. Plaintiff had an inmate testify to what that inmate saw at Plaintiff's hearing. Plaintiff tried to request almost twenty other inmates who saw or heard the entire incident to testify during the RVR Hearing, but that request was refused. Plaintiff further alleges that because of his severe mental disabilities, he was assigned a staff assistant to assist him by conducting interviews and gather facts related to the RVR. However, the staff assistant did not do anything to help him and did not conduct any interviews.

Plaintiff alleges that his requests to see a doctor were refused from January 18, 2014 to February 18, 2014. In between Plaintiff's requests, he had two more seizures. Plaintiff was then seen by Dr. Austria, who did nothing and said that Plaintiff would be fine.

### 2. Plaintiff's RVR Hearing and Appeal Process

On February 19, 2014, Correctional Lieutenant P. Davis conducted Plaintiff's RVR Hearing in her office. Plaintiff told Davis that the hearing was more than thirty days since he received his copy of the RVR and Kamena was not present at the meeting, which Plaintiff claims violated state laws. Plaintiff's witness, Inmate Carmony, testified for Plaintiff and reported a similar allegation of events as Plaintiff. Plaintiff again requested that he be allowed to interview Kamena and the twenty other inmates Plaintiff claims saw or heard the incident, but the request was refused and Davis found Plaintiff guilty of the RVR.

Plaintiff filed an appeal in order to receive the final copy of the RVR so he could file a staff complaint against Officer Kamena and Sergeant Gonzalez; Plaintiff also wanted inmate Garcia listed as an enemy. That appeal was rejected. Plaintiff filed another appeal to receive the final copy of the RVR which was rejected. On April 21, 2014, Plaintiff re-filed the appeal to receive the final copy of the RVR, which was accepted. On April 29, 2014, he received the final copy of the RVR. Lieutenant Davis fabricated and falsified statements on the final copy of the RVR that Officer Kamena was called as a witness, and that Plaintiff had questioned him.

///

On May 22, 2014, Plaintiff alleges he was called into the program office for the second level interview with Davis. Plaintiff claims that this appeal was partially against Davis, and therefore her conducting the interview violated his right to due process. This interview was filmed, and inmate Carmony was also interviewed for the appeal. The appeal was partially granted on June 30, 2014, stating that there was sufficient evidence to warrant an investigation of a staff complaint against Kamena and Gonzalez. Plaintiff also states he filed a complaint with the Government Claims Board.

On July 1, 2014, Plaintiff's appeal that was partially granted was filed with the Chief of Appeals R. Briggs. On September 8, 2014, Plaintiff alleges that the appeal was "illegally rejected by Chief of Appeals R. Briggs" (ECF No. 1, p. 16.) claiming that Plaintiff failed to attach two CDC-1858 Rights and Responsibility Statements, which are required to be attached for a staff complaint. Plaintiff alleges that the statements, dated May 5, 2014 were already attached to the original appeal. Also, at the second level interview with Davis, Plaintiff filled out an additional set of two forms and Davis signed them both as a witness.

On September 15, 2014, Plaintiff refiled the appeal with the Chief of Appeals Briggs. By December 11, 2014, the appeal was over thirty-days overdue so Plaintiff filed a separate appeal for the appeal being overdue. On December 15, 2014, Plaintiff's first appeal was rejected for a second time. This time it was cancelled, barring it from being reviewed. Plaintiff alleges that it was illegally rejected on the grounds that he had not filed the original appeal within the time constraints required. Plaintiff alleges that on January 2, 2015, he filed a separate appeal for his appeal that was filed seven months before, to be reviewed by Briggs. On January 18, 2015, Plaintiff filed a separate appeal as a staff complaint against Briggs for violating Plaintiff's time constraints and for illegally rejecting his original appeal on two separate occasions.

On April 2, 2015, Plaintiff received his original appeal and his appeal requesting that the original appeal be reviewed by Briggs. Both were denied, exhausting Plaintiff's administrative remedies. Plaintiff contents that he is still partially blind out of his left eye.

Plaintiff asserts that he brings claims for the violation of his right to be free from cruel and unusual punishment under the Eighth Amendment, his right to due process of law under the

Fourteenth Amendment, his right to medical care and treatment under the Eighth Amendment, and his right to be free from mental and emotional injury under the Eighth Amendment. He specifically claims that Defendants Kamena and Gonzales failed to protect him and were indifferent to his serious medical needs, that Defendant Angulo violated his right to medical care, and that Defendants Davis, Brigs, and Alfaro violated his due process rights.

Plaintiff seeks a preliminary and permanent injunction to have Defendant Gonzalez, Davis, Alfaro, Angulo, and Briggs fired from the California Department of Corrections ("CDCR"). Plaintiff would also like inmate Garcia charged with: assault with intent to commit great bodily injury, criminal threats with intent to terrorize, gang member enhancement, and that it was a racially motivated crime. Plaintiff also seeks compensatory damages in the amount of $100,000 against each defendant and punitive damages in the amount of $100,000 against each defendant. Plaintiff further desires "a declaration that the acts and omissions described herein violated Plaintiff's rights under the constitution and law of the United States" (ECF No. 1, p. 22) as well as a jury trial and Plaintiff's costs in the suit.

**C. Discussion**

**1. 1983 Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution … shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7

Plaintiff has failed to link Defendant S. Alfaro to any constitutional violation, since his only allegation against that Defendant is the conclusory statement that he violated Plaintiff's right to due process.

### 2. Supervisory Liability Under Section 1983 – Warden S. Alfaro

Insofar as Plaintiff brings suit against Defendant Alfaro based solely on his supervisory role as warden, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa Cty., 698 F.3d 896, 915–16 (9th Cir. 2012) (en banc). A supervisor, such as the warden, may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc) (citation omitted), abrogated in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Redman, 942 F.2d at 1146 (citations omitted). Thus, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. Iqbal, 556 U.S. 662, 676 (2009).

Here, Plaintiff fails to allege facts showing that Warden Alfaro was personally involved in Plaintiff's constitutional deprivation, or any connections between Alfaro's conduct and the constitutional violation. As noted above, his conclusory allegation that Warden Alfaro violated his due process rights is insufficient to support a claim.

### 3. Eleventh Amendment – Official Capacity

To the extent Plaintiff seeks to bring claims for damages against defendants in their official capacities, he may not do so. The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). As such, the Eleventh

1 | Amendment bars any claim for monetary damages against defendants acting in their official
2 | capacities.

### 4. Eighth Amendment – Deliberate Indifference & Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer, 511 U.S. at 832–33, 114 S. Ct. at 1976 (internal citations and quotations omitted). In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) is objectively, sufficiently serious, and (2) the official is deliberately indifferent to inmate's health or safety. Id. at 834, 1977; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 522 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff alleges that he was placed in a cell with inmate Garcia against state law, and that they had numerous fights, but "custody" refused to separate them. He was then attacked by inmate Garcia on January 13, 2014. He links no particular prison official(s) to these matters, and has not alleged sufficient factual detail to state a claim for the failure to prevent inmate Garcia's assault of him against any defendant.

Plaintiff has also failed to allege any claim against Defendant Gonzalez for deliberate indifference to any risk to Plaintiff's safety or a failure to protect him. As pleaded, Defendant Gonzalez gave Plaintiff a choice to either sign a marriage chrono or to be placed in administrative segregation, and Plaintiff opted to sign the chrono. Afterwards, Plaintiff was placed two cells away from inmate Garcia, and inmate Garcia was moved out of the building the next day. Plaintiff's allegations do not indicate that Defendant Gonzalez was deliberately indifferent to Plaintiff's safety, nor did any harm occur to Plaintiff resulting from Defendant Gonzalez's actions.

///

9

Plaintiff has sufficiently alleged a cognizable claim for failure to protect against Defendant Kamena for allegedly failing to protect him as he was being attacked by his cellmate.

### 5. Eighth Amendment–Deliberate Indifference to Serious Medical Needs

Plaintiff alleges he had a serious medical need and the failure to treat his condition resulted in further significant injury and "the 'unnecessary and wanton infliction of pain.'" (ECF No. 1, p. 20.) "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle, 429 U.S. at 104). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' "and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " McGuckin v. Smith, 914 F.2d 1050, 1059 (9th Cir. 1991) (quoting Estelle, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1337–41 (9th Cir. 1990)); Hunt v. Dental Dept., 865 F.2d 198, 200–01 (9th Cir. 1989).

"Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837. A deliberately indifferent response may be shown by allegations of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. In contrast, "mere negligence in diagnosing or treating

a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Id.

Plaintiff has failed to state a cognizable claim of deliberate indifference to serious medical need against Defendant LVN Angulo. According to Plaintiff, when he was unconscious, LVN Angulo revived him using ammonia. These allegations do not demonstrate a failure to respond to Plaintiff's condition at that point. After Plaintiff was taken to holding cages with a swollen eye, he explained to LVN Angulo that he had been attacked, could not see out of his swollen eye, and had a seizure, and LVN Angulo "glanced" at him. Plaintiff's allegations that he had an eye swollen to the point where he was blinded in that eye establish a serious medical need. Further, the allegation that LVN Angulo only glanced at him, when liberally construed and taken as true, sufficiently pleads a deliberately indifferent response. However, Plaintiff does not allege any facts discussing whether and how he was harmed by LVN Angulo's lack of response.

Plaintiff's conclusory allegations that Defendant Gonzalez was deliberately indifferent to his serious medical need, and that the failure to treat his condition resulted in further injury and pain, are also insufficient to state a claim. Plaintiff fails to allege what Defendant Gonzalez did or did not do that resulted in a violation of his rights.

Plaintiff does not name Dr. Austria as a defendant, but makes allegations that he was seen by Dr. Austria who "did absolutely nothing for me, and said that I 'would be fine.'" (ECF No. 1, p. 11.) To the extent Plaintiff attempts to state a claim against Dr. Austria, he has failed to do so.

Plaintiff has stated a claim for deliberate indifference to a serious medical need against Officer Kamena for his alleged indifference to his injuries from being attacked by his cellmate.

### 6. Fourteenth Amendment – Due Process

#### a. Heck Analysis

Plaintiff is informed that to the extent his due process claims imply that his guilty finding on his RVR was invalid, such claims may be Heck barred. In Heck, the United States Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target

of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–82. The favorable termination rule, also known as the Heck bar, applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. Edwards v. Balisok, 520 U.S. 641, 646–48 (1997). A prisoner's section 1983 challenge to disciplinary hearing procedures is barred if a judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits. Edwards v. Balisok, 520 U.S. 641, 646 (1997).

Here, Plaintiff does not directly allege whether the RVR Hearing resulted in the loss of good-time or behavior credits. However, he makes various allegations concerning alleged improprieties with his RVR, the RVR hearing, and the subsequent appeals process, including state law and procedural violations, fabricated and falsified statements, and incorrect or falsified findings that he failed to meet certain deadlines or provide certain necessary documentation. Thus, Plaintiff appears to assert claims that would necessarily invalidate the guilty finding on his RVR.

Plaintiff may not pursue any due process challenges that implicate the validity or duration of his incarceration. Plaintiff may only pursue due process claims related to his RVR guilty finding if he can demonstrate that his disciplinary conviction has been invalidated, Heck 512 U.S. at 489, or if he can otherwise allege facts that show that success on his claims would not result in a speedier release from his confinement. Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005).

### b. Due Process Violation

Assuming Plaintiff's due process claims are not Heck barred, the Due Process clause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in some "unexpected manner." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). Second, a prisoner may challenge a state action which does not restrain a protected liberty interest, but which nonetheless imposes some "atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life." Sandin, 515 U.S. at 484; Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996). If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process. Sandin, 515 U.S. at 484; Keenan, 83 F.3d at 1089.

Here, Plaintiff fails to allege that the prison disciplinary action deprived him of any liberty interest. Plaintiff also fails to allege that the prison system's disciplinary action imposed any "atypical and significant hardship" on him in relation to his prison life. Plaintiff's conclusory allegations that the RVR hearing and appeals process violated state law are insufficient to indicate a Federal due process violation based on the Fourteenth Amendment.

As to procedural protections, due process requires prison officials to provide the inmate with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 536−70 (1974). Due Process is satisfied where the minimum requirements have been met and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer.

It is well established that there is no constitutional right to a prison administrative appeal or review system, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), and that a state's creation of a prison administrative appeal or review system does not implicate a liberty interest protected by the Due Process Clause. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Prisoners also have no stand-alone due process right to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

Plaintiff has alleged that he was provided a copy of his RVR about a month before his hearing, that during his original RVR hearing, he was allowed to make statements to defend himself and was also allowed to present a witness. He has alleged that he was denied other witnesses, assigned staff assistance who was not helpful, but has not alleged sufficient factual information to show whether these matters violated his due process rights under the standards articulated above. His additional allegations that Defendant Davis fabricated and falsified that Officer Kamena was called and questioned as a witness does not establish the necessary deprivations of a liberty interest or atypical and significant hardship either.

### c. False Report by Defendant Kamena

Plaintiff also alleges that Defendant Kamena's RVR against him was a complete fabrication and contained nothing but lies. False charges alone are not actionable under § 1983 because falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States. Sandin, 515 U.S. at 472. An allegation of a false charge that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under Sandin—that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement—does not state a claim under § 1983. See Smith v. Mensinger, 293 F.3d 641, 653–54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under Sandin). Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under Sandin, a § 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. See Smith, 293 F.3d at 654; Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140–41 (7th Cir. 1984).

Here, Plaintiff's allegation that Defendant Kamena fabricated an RVR, without more, is insufficient to state a claim under section 1983.

///

///

### 7. Injunctive Relief and Charging Inmate Garcia with Crimes

Plaintiff seeks injunctive relief in the form of having Defendants Davis, Alfaro, Angulo, and Briggs fired from the CDCR. Plaintiff also seeks to have a number of state criminal charges pressed against inmate Garcia. First, CDCR is not a party to this action, and, secondly, this is a civil case. The Court does not have the jurisdiction to provide these specific forms of relief.

## III. Conclusion and Order

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claims against Defendants Gonzalez, Davis, Alfaro, Briggs, and Angulo be dismissed from this action for the failure to state a claim upon which relief may be granted; and

2. Defendants Gonzalez, Davis, Alfaro, Briggs, and Angulo be dismissed from this action for the failure to state any cognizable claims for relief against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 29, 2018**         /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE