# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT K. RICKS, | Case No. 1:15-cv-00715-DAD-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT KAMENA'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KAMENA, | (ECF No. 32) |
| Defendant. | **FOURTEEN (14) DAY DEADLINE** |

## FINDINGS AND RECOMMENDATIONS

**I.    Background**

Plaintiff Scott K. Ricks ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against Defendant Kamena for the failure to protect Plaintiff from his cellmate's attack as he was attacked, and for deliberate indifference to Plaintiff's serious medical need following the attack, in violation of the Eighth Amendment.

On October 2, 2017 Defendant Kamena filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the grounds that: (1) Plaintiff's failure to protect claim is unsupported by any admissible evidence; (2) Plaintiff's deliberate indifference to medical treatment claim is unsupported by any admissible evidence; and (3) Defendant Kamena is entitled to qualified immunity.[1]  (ECF No. 32.)  On November 8, 2017, the Court directed Plaintiff to file

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for

1

an opposition or statement of non-opposition within thirty days. (ECF No. 35.) Plaintiff filed a "Response to Defendant's Statement of Undisputed Facts" on November 20, 2017, and an opposition to the motion for summary judgment on November 27, 2017. (ECF Nos. 39, 40.) On November 27, 2017, Defendant replied to the opposition and filed objections to the response. (ECF Nos. 41, 42.) On December 21, 2017, Plaintiff filed a "Second Motion in Opposition to Granting Summary Judgment," to which Defendant did not respond.[2] (ECF No. 43.) The motion for summary judgment is deemed submitted. Local Rule 230(l).

## II. Legal Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

---

summary judgment. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 32-1.)

[2] Neither the Federal Rules of Civil Procedure nor the Local Rules contemplate the filing of a surreply. Further, the Court did not request, nor did Plaintiff seek leave to file, a surreply. Nevertheless, in an abundance of caution, the Court exercised its discretion to consider Plaintiff's second opposition in reference to the pending motion for summary judgment, but found nothing that changed the Court's analysis. Therefore, and in light of Defendant's failure to file any opposition, the Court finds that Defendant was not prejudiced by the Court's consideration of Plaintiff's surreply.

trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that the Court did not consider the argument, document, paper, or objection. The Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III. Discussion**

**A. Evidentiary Objections**

Defendant objects to Plaintiff's statement of facts and exhibits attached to Plaintiff's opposition on various grounds. As noted above, not every objection will be addressed by the Court individually, as doing so is neither necessary nor is that the practice of this Court in the summary judgment context. For the sake of clarity and to the extent it is appropriate, certain individual objections have been addressed by the Court below. Other objections are better dealt with here, in general terms.

Defendant first objects that Plaintiff has not fully complied with the rules in preparing his opposition to Defendant's motion for summary judgment, including by failing to cite to admissible evidence in support of his Statement of Undisputed Material Facts. However, Plaintiff's complaint, opposition, response to Defendant's statement of facts, and second motion in opposition to summary judgment, are verified under penalty of perjury, and may be considered as opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); Johnson v. Melzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions).

The hearsay objections are overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court did not find the hearsay objections raised by Defendant to be preclusive of the evidence submitted.

Finally, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful. See e.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011

WL 1807384, at *3 (E.D. Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-062919 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

### B. Statements of Facts

#### 1. Defendant's Statement of Facts ("DSF") [3]

1. Plaintiff Scott Ricks (V-35068) was formerly an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).
2. At all times relevant to the allegations in this case, Plaintiff was housed at North Kern State Prison (NKSP). (ECF No. 1, p. 3.)
3. On January 13, 2014, Defendant Kamena was working as a Floor Officer in Facility D, Building 5 at NKSP. (Kamena Decl. ¶ 3.)
4. As a floating Officer, January 13, 2014 was the first day that Defendant worked on Facility D, Building 5 at NKSP. (Kamena Decl. ¶ 3; Cote Decl. Ex. A.)
5. Floating Officers at NKSP check-in with the outgoing shift to see if any incidents have taken place earlier in the day that would affect programming. (Kamena Decl. ¶ 4.)
6. There are no incident reports involving Inmate Garcia (AP-0858) from December 19, 2013 to January 13, 2014, other than the incident with Plaintiff. (Lujan Decl. ¶ 5.)
7. On December 19, 2013, the date of reception at NKSP, Plaintiff was evaluated for his housing needs. (Lujan Decl. ¶ 6.)
8. On December 19, 2013, Plaintiff was determined to be racially eligible and suitable for dual housing as he did not claim any current gang affiliation. (Lujan Decl. ¶ 6.)
9. Prior to December 19, 2013, Inmate Garcia was evaluated and determined to be racially eligible for housing. (Lujan Decl. ¶ 5.)
10. As of January 13, 2014, Inmate Garcia was not validated as a member of any disruptive group and was racially eligible for housing with anyone. (Lujan Decl. ¶ 5.)

///

---

[3] See Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment (ECF No. 32-3).

5

11. As of January 13, 2014, Plaintiff was not a validated member of any disruptive group. (Lujan Decl. ¶ 6.)

12. On January 13, 2014, Defendant responded to a "man down" call for cell 120 on Facility D, Building 5 at NKSP. (Kamena Decl. ¶ 6.)

13. At approximately 1553 hours, Defendant arrived at cell 120, and observed Plaintiff and Inmate Garcia striking each other with their fists. (Kamena Decl. ¶ 6.)

14. Defendant ordered the inmates to get down on the ground with no success. (Kamena Decl. ¶ 6.)

15. Immediately following the unsuccessful order, Defendant sounded his personal alarm, indicating a Code 1 emergency and requesting assistance from staff. (Kamena Decl. ¶ 6.)

16. Defendant ordered the inmates to get down on the ground a second time and they complied with this order. (Kamena Decl. ¶ 6.)

17. Responding staff arrived, handcuffed the inmates, and escorted them out of the building for medical treatment. (Kamena Decl. ¶ 6.)

18. On January 13, 2014 at 1600 hours, an RN evaluated Plaintiff for the injuries sustained in the incident with Inmate Garcia. (Lee Decl., Ex. A, p. 2.)

19. On January 13, 2014 at 1603 hours, Inmate Garcia was evaluated for the injuries sustained in the incident with Plaintiff. (Lee Decl., Ex. B, p. 2.)

### 2. Plaintiff's Statement of Facts ("PSF") [4]

1. On December 19, 2013, Plaintiff was transferred to NKSP.

2. Plaintiff is white, and was placed in a cell with a Hispanic gang member, Inmate Garcia. Plaintiff and Inmate Garcia got in numerous cell fights, but custody refused to separate them.

3. Defendant Kamena frequently worked on Facility D, Building #5, at NKSP.

///

---

[4] See Complaint (ECF No. 1), Plaintiff's Response to Defendant's Statement of Undisputed Facts (ECF No. 39), Plaintiff's Opposition to Motion for Summary Judgment (ECF No. 40), and Plaintiff's Second Motion in Opposition to Granting Summary Judgment to Defendant (ECF No. 43). Unless otherwise indicated, immaterial facts and legal conclusions are omitted from this statement and relevant objections are overruled.

4. From December 19, 2013 to January 13, 2014, Plaintiff informed housing unit staff and every officer that worked Facility D, Building #5, at NKSP, that he was incompatible being housed with Inmate Garcia (AP-0858), and that they had been in multiple cell fights. During dayroom on January 13, 2014, Plaintiff personally informed Defendant that Inmate Garcia and Plaintiff were incompatible being housed together, and that they had been in multiple cell fights, and that Plaintiff was in fear for his safety, being housed with Inmate Garcia, and Plaintiff requested to be moved out of that cell. Defendant ignored Plaintiff's request and refused to move him.

5. Plaintiff has well over twenty-five white supremacist and racist tattoos identifying him as a white supremacist gang member. Plaintiff told Defendant on January 13, 2014 that he was a white supremacist gang member, which prevented Plaintiff from being housed with inmates of another race.

6. On January 13, 2014, Inmate Garcia was physically assaulted by two other gang members in another cell.

7. Upon returning to his cell, Inmate Garcia yelled, "You fucking racist!" and began hitting Plaintiff in the back of the head with a cup. Inmate Garcia knocked Plaintiff unconscious, and Plaintiff had a seizure. When Plaintiff regained consciousness, he crawled to the cell door and began yelling: "C/O, man down, cell 120! Man down, cell 120!"

8. At approximately 1553 hours, Defendant arrived at Plaintiff's cell. Plaintiff was standing by the door and had blood pouring from his nose, saturating his white t-shirt. Inmate Garcia was on his bunk. Plaintiff told Defendant, "My cellie just attacked me, and I had a seizure!" and "Please! Help me! Open this door!"

9. Defendant Kamena laughed at Plaintiff, shook his head, spun on his hell, and walked away from the cell door, to the control booth tower, to talk to C/O Gentiles. Plaintiff heard Defendant say, "He says his cellie just attacked him, what should I do?"

10. At this time, Inmate Garcia yelled, "You fucking rat, I'm going to fucking kill you!" and Inmate Garcia began hitting Plaintiff in the head with his weapon. Plaintiff began yelling, "Help, C/O! Help, C/O! Help!" Defendant never activated his alarm, Defendant refused

to help Plaintiff, even after Plaintiff told Defendant that he had been assaulted, and blood was pouring from his nose. At no time did Plaintiff ever strike or hit Inmate Garcia. There was nowhere for Plaintiff to go, and Plaintiff was knocked unconscious a second time.

11. When Plaintiff regained consciousness a second time, he was handcuffed and a nurse was using ammonia to revive him. Plaintiff immediately noticed that his left eye was swollen shut, and he was completely blind out of his left eye. Plaintiff was taken to the holding cages by the Facility D program office.

**C.     Analysis**

Defendant argues that the undisputed facts reveal that Plaintiff was engaged in mutual combat with his cellmate and Defendant followed protocol by sounding a Code 1 emergency prior to intervening in the altercation. Furthermore, Plaintiff and his cellmate received medical care just minutes after their fight. Finally, a reasonable officer in Defendant's position would have thought that sounding an alarm and waiting for staff assistance, prior to intervening, was proper under the circumstances, and therefore Defendant is entitled to qualified immunity. Defendant argues that, as it was his first day in that Facility and Building, there was no way for him to have known that Plaintiff and Inmate Garcia housing together would create a conflict.

In opposition, Plaintiff presents a very different statement of facts, and argues that Defendant ignored his initial request for assistance, and failed to protect him from a second assault from Inmate Garcia. Plaintiff further argues that Defendant was aware that Plaintiff was incompatible to be housed with Inmate Garcia, due to their race and gang affiliations. Plaintiff asserts that he has more than 100 witnesses who can corroborate his version of events, and requests that all 100 be subpoenaed to testify at trial.

Not surprisingly, the parties offer contradictory versions of events, and each party has supported his version with factual statements made under penalty of perjury. Although Defendant supports his position with Plaintiff's medical records and additional declarations, it is impermissible for the Court to assess the credibility of the witnesses or weigh the evidence. Soremekun, 509 F.3d at 984; T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n, 809 F.2d

626, 630–31 (9th Cir. 1987). Thus, in a battle of dueling declarations, the winner may not be declared based upon the number of declarations submitted or the contents therein, so long as the declarations in question are based on personal knowledge of facts admissible in evidence. Defendant's argument that the motion should be granted because Plaintiff failed to produce "credible evidence" to support his statement of disputed facts goes directly against the Court's obligation not to make credibility determinations or weigh conflicting evidence.

In sum, there exist factual disputes between the parties regarding what occurred on January 13, 2014, and those disputes are material. As a result, the trier of fact must determine what did or did not happen between the parties on the date in question. Defendant is not entitled to judgment as a matter of law.

### D. Qualified Immunity

In addition to arguing entitlement to judgment on the merits, Defendant argues that he is entitled to qualified immunity.

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 535 U.S. 94, 201 (2001)).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." Chappell v. Mandeville, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from on other grounds by Pearson, 355 U.S. at 817–21; see also Bryan v. MacPherson, 630 F.3d 805, 817 (9th Cir. 2010). However, the existence of a material factual dispute does not necessarily preclude a finding of qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002). In this instance, for the reasons previously

articulated, the evidence viewed in the light most favorable to Plaintiff demonstrates constitutional violations and there exist triable issues of fact as to whether Plaintiff's rights were violated.

In analyzing the second inquiry, because of the factual disputes as to the parties' conduct already identified, Defendant is not entitled to summary judgment based on qualified immunity. See Lolli v. Cty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing Roth v. Veteran's Admin., 856 F.2d 1401, 1408–10 (9th Cir. 1988). At the time of the incident, it was clearly established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Furthermore, it was also clearly established that Defendant could not intentionally deny or delay access to medical care. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976).

If Plaintiff's version of the facts ultimately prevails, there is a reasonable likelihood that Defendant would not be entitled to qualified immunity. Defendant may have failed to protect and been deliberately indifferent to Plaintiff's serious medical need if, in fact: Plaintiff had previously informed Defendant he was incompatible to house with Inmate Garcia and feared for his life, Defendant later saw Plaintiff bleeding and requesting assistance after an apparent assault by Inmate Garcia, Defendant disregarded the risk to Plaintiff's safety of leaving him in the cell with Inmate Garcia, and Plaintiff suffered further injury due to Defendant's delay in summoning medical treatment.

To the extent that Plaintiff's version of events lacks credibility, Defendant may challenge it at trial. The Court is not in the position to weigh dueling declarations, and Plaintiff has proffered evidence sufficient to support his claim that Defendant failed to protect him and was deliberately indifferent to his serious medical need on January 13, 2014. Defendant is not entitled to qualified immunity.

**E.     Plaintiff's Requests for Subpoenas**

In his second opposition to Defendant's motion for summary judgment, Plaintiff requests subpoenas from the Court "for the names, CDCR #s, and current locations, of all inmates housed

at NKSP, Facility-A, Building #5, 'A' Section, on January 13, 2014 at 1600 hrs." Plaintiff further requests subpoenas for all 100 of these inmates to appear at trial for this case. (ECF No. 43, p. 7.)

To the extent Plaintiff is requesting that the Court order Defendant or any third party to produce additional discovery, Plaintiff is reminded that discovery in this matter closed on July 21, 2017. Plaintiff has offered no explanation for his inability to request this information during the normal course of discovery, and therefore the request is untimely.

To the extent Plaintiff requests the issuance of subpoenas to ensure the attendance of witnesses at trial, no trial date has been set, and the request is premature. Should a trial be set that requires witnesses, Plaintiff will be notified of the procedure to obtain the attendance of witnesses.

**IV.     Conclusion and Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment, (ECF No. 32), be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 30, 2018**                    /s/ Barbara A. McAuliffe
                                                UNITED STATES MAGISTRATE JUDGE

11